# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AARON MANOPLA and EVELYN MANOPLA,<br><br>      Plaintiffs,<br><br>v.<br><br>HOME DEPOT, INC., ATLANTIC WATER PRODUCTS, et al.<br><br>      Defendants. | Civil Action No.: 15-cv-01120 (PGS)<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Defendant Home Depot's motion to amend and certify for interlocutory appeal. (ECF No. 68). Defendant Atlantic Water Products joins the motion by filing a memorandum in support. (ECF No. 69).

I.

On February 12, 2015, Plaintiffs Aaron and Evelyn Manopla brought this action on behalf of themselves and all others similarly situated against Defendants Home Depot, Inc., and Defendant Atlantic Water Products, Inc. alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"). In their Third Amended Complaint, the Manoplas allege Atlantic Water called their cell phone multiple times beginning January 7, 2015 lasting several days using an automatic telephone dialing system (ATDS) or an "artificial or pre-recorded voice" without their prior express consent. The Manoplas further allege Home Depot is vicariously liable for the calls. The Manoplas are seeking statutory damages in the amount of $500, treble damages for willful and knowing violation of the TCPA, and injunctive relief. Defendants filed a motion

for summary judgment which was denied by this court on September 29, 2017 based on the reasons placed on the record on the same date. (ECF No. 64).

*Factual Background:*

Sometime during December 2014, the Manoplas visited a Home Depot store where Ms. Manopla encountered a kiosk containing water-test-by-mail kits and accompanying forms. Although the kit displayed Home Depot logos, it was to be returned to Atlantic Water. ("Exhibits B and C"). Ms. Manopla took the kit home because she was interested in learning more about her home's tap water. Ms. Manopla filled in the contact information section of the water test request card with her cell phone number, email address and mailing address and mailed the card with a water sample to Atlantic Water. The form did not contain the phrase "solicitation communication" or "automated telephone calls." Ms. Manopla testified she expected to be contacted and had no preference as to which of the methods was used.

*First Call* [1]

The parties agree Home Depot did not make any of the calls at issue in this case. On January 7, 2015, Atlantic Water placed its first call to Ms. Manopla's cell phone. Ms. Manopla took the call while she was at work and heard a "pre-recorded" voice stating the following:

> Hi, this is Tim from Home Depot Water Testing Services. We have your test results from the water sample that you sent in. To talk to a live operator, hit any button on your keypad. Or, you can reach us at (302) 544-7144. Again, that is (302) 544-7144. Anytime between 9 am and 9 pm Monday through Friday or Saturday between 9 am and 1 pm. Thank you for calling. Have a Nice Day.

Ms. Manopla pushed the number and spoke to a lady and who gave her the water test results. Ms. Manopla was advised if she wanted to receive more information about her water, she

---
[1] "Exhibit D" is a true and correct copy of the report generated by Atlantic Water's telephone service provider USAPhone.com ("USA Phone") that sets out information concerning any and all calls made between Ms. Manopla's cell phone number and any telephone number of Atlantic Water that occurred at any time on January 7, 8 and 9, 2015.

could schedule an in-home consultation and would receive "a gift card for participating." Ms. Manopla recalled telling the representative she was not interested because of the cost. Atlantic Water disputes this point and testified that as with the initial testing, any additional testing that Atlantic Water might have performed at the Manoplas' home also would have been for free.

Before the parties could finish their conversation, Ms. Manopla ended the call because a customer walked in to the store. Ms. Manopla asked the representative to call her back so that they could continue their discussion about the gift card.

Following the first call, there were eight attempted call-backs between Ms. Manopla and Atlantic Water. None of the eight calls resulted in a person-to-person connection.

    i. First attempted call-back: 1/7/15 at 5:24 p.m. This call was the result of Atlantic Water hand-dialing the Manoplas. The call lasted 2 seconds.

    ii. Second attempt call-back: 1/7/15 at 7:58 p.m. This call was the result of the Manoplas calling Atlantic Water. The call reached the Atlantic Water voice mailbox 999 and lasted 58 seconds.

    iii. Third attempted call-back: 1/7/15 at 8:00 p.m. This call was the result of the Manoplas calling Atlantic Water. The call reached Atlantic Water voice mailbox 206 and lasted 1 minute 37 seconds.

    iv. Fourth attempted call-back: 1/8/15 at 11:44:05 a.m. This call was the result of Atlantic Water hand-dialing the Manoplas. This call lasted 5 seconds.

    v. Fifth attempted call-back: 1/8/15 at 11:44:41 a.m. This call was the result of the Manoplas calling Atlantic Water. The call reached Atlantic Water voice mailbox 202 and lasted 55 seconds.

  vi. Sixth attempted call-back: 1/8/15 at 4:15 p.m. This call was the result of Atlantic Water hand-dialing the Manoplas. The call lasted 3 seconds.

  vii. Seventh attempted call-back: 1/9/15 at 9:52 a.m. This call was the result of the Manoplas calling Atlantic Water. The call reached Atlantic Water voice mailbox 202 and lasted 49 seconds.

  viii. Eighth attempted call-back: 1/9/15 at 11:54 a.m. This call was the result of Atlantic Water calling the Cell Phone Number. The call lasted 1 minute, 6 seconds.

The three Atlantic Water calls to Ms. Manopla's cell phone number were hand-dialed by an Atlantic Water representative. At no time during any of the back and forth phone calls did the Manoplas tell Atlantic Water should stop calling. The Manoplas testified they did not incur any charges nor did they lose any minutes due to any of the Atlantic Water calls. According to Ms. Manopla, there was one voicemail message left on her cell phone voicemail.

The tenth and final call between the parties was made on January 9, 2015, at 1:31 p.m. During the final call, Ms. Manopla asked the Atlantic Water representative about the Home Depot gift card. Mr. Manopla overheard the Atlantic Water representative tell Ms. Manopla that they were not getting the gift card, so he took the phone from Ms. Manopla. The Atlantic Water representative told him that the first Atlantic Water representative was mistaken and that the Manoplas were not getting the gift card unless they agreed to have someone from Atlantic Water come to their home. After the final call, Mr. Manopla contacted an attorney to discuss taking legal action about getting the gift card.

  *Facts pertinent to Vicarious Liability*

Atlantic Water is a party to a 2007 Home Depot Service Provider Agreement (SPA) (See ECF No. 47). As a service provider, Atlantic Water maintains the kiosks offering their water-test-

by-mail kits in certain Home Depot stores. The SPA provides terms and conditions for Atlantic Water, as an independent contractor, to provide "water treatment and air quality products including but not limited to water softeners, water conditioners, water filtration or air purification equipment" to leads generated by Home Depot. The SPA includes terms such as: (1) number of hours an Atlantic Water employee must be present in a Home Depot store; (2) minimum number of leads Atlantic Water must generate from Home Depot stores; (3) close rate percentages based upon in-home consultations obtained from the Home Depot call center or Atlantic Water; (4) revenue sharing between Home Depot and Atlantic Water; and (5) payment processing from customers to Home Depot's payment system.

The SPA provides Atlantic Water may use Home Depot's trademark and name, with the caveat that Atlantic Water must self-identify as an authorized service provider for Home Depot. Atlantic Water must also call individuals who have returned the water test mail kit from a call center manned by a live customer representative. Ms. Manopla testified she did not recall if the initial pre-recorded message stated that the caller was from Home Depot, but the SPA provides the Atlantic Water representative must "identify themselves as being from the local Water Treatment dealer, an authorized provider for the Home Depot." Home Depot also requires that service providers wear Home Depot badges when they are in a customer's home and may not wear clothing bearing a competitor's logo on service visits.

Home Depot also gave Atlantic Water with a "Service Provider Reference Guide" A section titled "Secret Shops" describes how Home Depot ensures the customer's experience is good and that Atlantic Water is following all of the specifications laid out in the document. Home Depot admits they review surveys and may reduce the number of stores allocated to Atlantic Water,

put them on a performance improvement plan, or terminate their SPA if they routinely receive low scores.

### *Questions Justifying Certification for Immediate Appeal*

Home Depot presents the following questions as basis for certification for immediate appeal:

1. Whether the consent requirement under the TCPA is satisfied where the recipient of call submits her water for testing, asks to receive information concerning the results of the water test, provides her contact information, including her cell phone number, and expects to be contacted to receive the requested information

2. Whether a bare procedural violation of an FCC regulation, without any evidence of concrete injury-in-fact, is sufficient to establish Article III standing where the recipient of the call knowingly submitted her cell phone number and expected to be contacted.

3. Whether vicarious liability can be imposed under the TCPA where the undisputed facts demonstrate that the alleged agent is an independent contractor of the alleged principal, their relationship is governed by a written agreement providing for the use of live callers, and the alleged principal did not exercise day-to-day control over the alleged agent.

### *Summary Judgment Holding*

With regards to the calls, the Court held that

> Only the first call clearly shows some type of ATDS was utilized. The rest of the calls would seem to have been hand-delivered or were made by the Manoplas. So hand-dialed calls do not fall within the TCPA because no automatic dialing system was used. As such, the Court grants summary judgment to dismiss all calls that were not subject to an ATDS. The parties should confer about the 10 calls and determine which are subject to the lawsuit.

(Transc. Pg. 8-9). The Court then elaborated on prior written consent with regards to Defendant's argument that Plaintiff had given such consent by signing up for the service. The Court found the consent insufficient because it did not mention that Plaintiff would receive automated calls. (Id. pg. 9-10).

Regarding vicarious liability the Court stated,

6

> Pursuant to the facts set forth [. . .] Home Depot retained substantial control over the arrangement with Atlantic Water through an agreement, which provided for the monitoring and management of the work. In addition, Home Depot's logos were utilized on the booth and on some of the work clothes of the Atlantic Water representatives. There is some type of agency relationship that is an issue that must be decided by the trier of fact.

(Trans. Pg. 11-12).

## II.

Section 1292(b) provides that interlocutory appeals of a district court order can only be granted when the following three requirements are met: (1) the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; (3) and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b) (emphasis added). The party moving for certification of the appeal bears the burden of establishing the requirements under § 1292. *See e.g., Meyers v. Heffernan*, No. 12-2434, 2014 U.S. Dist. LEXIS 175918, at *3 (D.N.J. Dec. 22, 2014). However, the decision to certify an interlocutory appeal "is wholly within the discretion of the courts," even if all three statutory elements are met. *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976) (citation omitted). Strong policy against piecemeal litigation requires that motions for interlocutory appeals should be granted "sparingly." *Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996). In that regard, "the court must remember that ... [a] motion should not be granted merely because a party disagrees with the [previous] ruling." *Id*. A "difference of opinion" must arise out of a genuine issue as to the correct legal standard. *Id*. A question is "controlling" if the incorrect disposition would necessitate a reversal of the final judgment. *Id*.

III.

1. *Controlling questions of law*

Defendant first argues that there are three controlling issues of law. First, the Court's determination that Atlantic Water's initial call to Plaintiffs required prior express written consent, which if reversed, would result in the dismissal of Plaintiff's TCPA claim. Second, if the Third Circuit holds that Plaintiff did not suffer a concrete injury in fact fairly traceable to the use of an ATDS for a solicited and expected call, they would lack standing to continue this matter. Lastly, the Court's finding of agency relationship between Home Depot and Atlantic Water, if reversed would eliminate the basis for vicarious liability on the part of Home Depot in this matter.

2. *Substantial Ground for difference of opinion on questions implicated by the Court's Order.*

   a. TCPA Violations

Defendant supports that the Court mistakenly applied the 2012 FCC rules in determining that written consent was required because those rules protect customers from unwanted telemarketing calls rather than information calls. The applicable rule would be 47 C.F.R. §64.1200(a)(1) which states that "Non-telemarketing texts and calls require only 'prior express consent.'" *Wick v. Twiolio, Inc.,* No. C16-00914RSL, 2017 EL 2964855, at *5 (W.D. Wash. July 12, 2017). Plaintiff provided express consent when she provided her cell-phone number when submitting her water test. Plaintiff opposes by arguing that this is an attempt by Defendant to re-litigate the nature of the call.

Defendant mentions a recent decision by this District, *Broking v. Green Brook Buick GMC Suzuki*, 2017 U.S. Dist. LEXIS 134026 (Aug. 22, 2017), were the court used the standard for prior express consent, rather than the prior express written consent outlined in 47 CFR 64. 1200 (f)(8).

In *Broking*, Plaintiff brought a TCPA claim against Defendant for violations that arose out

of one automated call made to Plaintiff's residence. Id. at *2. There, this Court applied the language in 47 U.S.C. §227(b)(1)(B), which states that the TCPA prohibits a party from using an ATDS "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." There the court held that a call that was made with the only purpose to complete or confirm Plaintiff's satisfaction with his service did not constitute telemarketing. *Id.* at *15.

Here, the call did not serve only informative purposes. During the call Plaintiff was offered a gift card in exchange for scheduling an in-home consultation. "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). The call initiated in this case clearly sought to encourage Plaintiff to hire the company for services, namely in-home water testing.

The facts of this case more closely resemble those of *Evans v. Nat'l Auto Div., L.L.C.,* 2016 U.S. Dist. LEXIS 123660 (Sept. 12, 2016), where Plaintiff filed a TCPA claim after signing up for free quotes and subsequently received automated calls. *Id.* at *3. In that case, as here, the issue of written prior consent was raised, though its adequacy remained unresolved. *Id*. at *10.

Standing

Next, Defendant argues that there is substantial ground for difference of opinion on whether a bare procedural violation of an FCC regulation supports Article III standing. Plaintiffs did not incur any charges and did not lose money or minutes of cellphones uses to Atlantic Water calls. Defendant also argues that the holding of *Sussino v. Work Out World Inc*., 862 F.3d 346 (2017) does not apply because in *Sussino* this Court held that there was an injury where Plaintiff received an unsolicited call. *Id.* at 348. Here, Defendant holds that Plaintiffs admitted that they

9

wanted and expected a call for their water test, therefore they fail to allege that they suffered an injury in fact. Yet, Defendant disregards that the ATDS was not only used to convey the water test result but also to offer additional services, such as in-home water testing.

      b. <u>Agency Relation</u>

Defendant argues that the Court's holding that the agency relationship could exist even though the agreement provides that Atlantic Waters is an independent contractor is erroneous and provides substantial grounds for difference of opinion. At the very least, the identification of Atlantic Waters as an independent contractors creates a presumption that no agency relationship exists. As this Court mentioned when deciding the motion for summary judgment, Home Depot retained substantial control over the arrangement with Atlantic Water through an agreement, which provided for the monitoring and management of the work. Additionally, Home Depot's logos were utilized on the booth and on some of the work clothes of the Atlantic Water representatives, indicating that some type of agency relationship exists. (Trans. 11-12).

      3. *<u>An immediate appeal may materially advance the ultimate determination of the case.</u>*

Defendant supports that should the appeal be allowed, and the holding of this Court reversed, the case would effectively be terminated.

Defendant's request to review the analysis provided by the Court could have been filed as a motion for reconsideration, rather than a motion for interlocutory appeal. As Plaintiff mentioned, at the center of this request for appeal is the issue of whether the call was a telemarketing one or not. Defendant's disagreement with the findings of this Court is not sufficient to meet the heavy burden mandated by interlocutory appeal.

The motion is denied.

**ORDER**

This matter having come before the Court on Defendant Home Depot's motion to amend and certify for interlocutory appeal (ECF No. 68); and Defendant Atlantic Water Products, Inc.'s motion in support of the motion to amend and certify interlocutory appeal (ECF No. 69); and the Court having carefully reviewed and taken into consideration the submissions of the parties, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 8th day of January, 2018

ORDERED that Defendants' motions to amend and certify for interlocutory appeal (ECF No. 68 and 69) are denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.