# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AARON MANOPLA and EVELYN MANOPLA, on behalf of themselves and all others similarly situated,<br><br>                     Plaintiffs,<br>     vs.<br><br>HOME DEPOT U.S.A., INC., ATLANTIC WATER PRODUCTS INC. and JOHN DOES 1-25,<br><br>                     Defendants. | Civil Action No. 3:15cv1120-PGS-TJB<br><br>Honorable Peter G. Sheridan, U.S.D.J.<br>Honorable Tonianne J. Bongiovanni, U.S.M.J. |

_____

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE THE OPINION OF, AND BAR TESTIMONY BY, ANYA VERKHOVSKAYA

_____

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.  MS. VERKHOVSKAYA'S PROPOSED METHODOLOGY DOES NOT ACTUALLY PURPORT TO IDENTIFY CLASS MEMBERS ......................... 2

    A.  Ms. Verkhovskaya Cannot Identify Which Numbers Were Obtained Through Home Depot. ................................................................................ 4

    B.  Ms. Verkhovskaya Does Not Address Consent. ............................................. 6

    C.  Ms. Verkhovskaya Does Not Address Whether a Prerecorded Message Actually Played. ........................................................................... 7

    D.  Plaintiffs' Spoliation Theory Does Not Excuse Their Rule 23 Failures. ....... 8

II. MS. VERKHOVSKAYA HAS NOT TESTED HER PROPOSED METHODOLOGY IN THIS CASE. ............................................................... 9

CONCLUSION ....................................................................................................... 12

CERTIFICATE OF SERVICE ................................................................................ 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
  2017 WL 1806583 (N.D. Cal. May 5, 2017) ...................................................... 10

*In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*,
  795 F.3d 380 (3d Cir. 2015) ................................................................................ 8

*Cordoba v. DirecTV, LLC*,
  320 F.R.D. 582 (N.D. Ga. 2017) ......................................................................... 6

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ...................................................................................... 2, 10

*Ginwright v. Exeter Fin. Corp.*,
  280 F. Supp. 3d 674 (D. Md. 2017) .................................................................... 7

*Krakauer v. Dish Network, L.L.C.*,
  2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) ..................................................... 8

*Lavigne v. First Cmty. Bancshares, Inc.*,
  2018 WL 2694457 (D.N.M. June 5, 2018) ....................................................... 10

*Mahoney v. TT of Pine Ridge, Inc.*,
  2017 WL 4876213 (S.D. Fla. June 26, 2017) ................................................... 10

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ................................................................................ 3

*Reyes v. BCA Fin. Servs., Inc.*,
  2018 WL 3145807 (S.D. Fla. June 26, 2018) ..................................................... 6

*Smith v. Microsoft Corp.*,
  297 F.R.D. 464 (S.D. Cal. 2014) ......................................................................... 9

*Southwell v. Mortg. Inv'rs Corp. of Ohio, Inc.*,
  2014 WL 3956699 (W.D. Wash. Aug. 12, 2014) .............................................. 11

*Van Orman v. Am. Ins. Co.*,
    680 F.2d 301 (3d Cir. 1982) ............................................................................. 7

*West v. California Servs. Bureau, Inc.*,
    323 F.R.D. 295 (N.D. Cal. 2017) ................................................................. 10

# INTRODUCTION

Plaintiffs proffer Ms. Verkhovskaya as an expert for one purpose, but the record indicates she plans to do far less. In their class certification brief, Plaintiffs described Ms. Verkhovskaya as their expert for identifying class members to help them attempt to satisfy the ascertainability requirement. *See* Pls.' Class Cert. Br. at 21 (explaining that Plaintiffs hired Ms. Verkhovskaya "to provide testimony regarding a proposed methodology for conducting a reliable reverse lookup *to identify class members* based off of their phone numbers") (emphasis added). But now, Plaintiffs claim Ms. Verkhovskaya "does not propose to do anything in this case" other than confirming whether a number is for a cell phone or landline, and then identifying "the name and most recent address of the individual associated with the number." Pls.' Opp'n at 2. In this case, those two objectives are not the same. The critical question for class certification purposes is which phone numbers are in the class, and Ms. Verkhovskaya cannot answer that question. And while a scientific methodology for identifying members of a proposed class may reasonably be the subject of relevant expert opinion, Ms. Verkhovskaya has not offered such a methodology here. Instead, what she has offered here is the largely ministerial task of matching phone numbers to names and addresses as part of a post-judgment or post-settlement claims administration process, which has no relevance here. The

confusion over what Ms. Verkhovskaya will actually do results in no small part from the fact that she has not actually done any analysis in this case.

In their opposition brief, Plaintiffs concede, as they must, that *Daubert* requires a showing that the expert's methodology "can be applied to the facts in issue." Pls.' Opp'n at 3 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993)). Plaintiffs also concede that to be admissible, expert testimony must have "the potential for assisting the trier of fact." *Id.* (citing *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 780 (3d Cir. 1996)). In other words, an expert's opinion and testimony must "fit" the case and the purpose for which it is offered. Pls.' Opp'n at 4. While Ms. Verkhovskaya's process for matching names and numbers may have been adequately suited to claims administration in other class actions, her opinion does not fit the reason for which it is offered in *this* case—to show that class members may be identified and that the proposed class is ascertainable for purposes of class certification—particularly given that she has not actually performed any analysis thus far. Ms. Verkhovskaya's opinion should therefore be excluded.

## ARGUMENT

### I. MS. VERKHOVSKAYA'S PROPOSED METHODOLOGY DOES NOT ACTUALLY PURPORT TO IDENTIFY CLASS MEMBERS.

Plaintiffs do not dispute that before they can rely on expert testimony "to demonstrate conformity with Rule 23," they must first satisfy the *Daubert* standard. Defs.' Br. at 7 (quoting *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d

2

Cir. 2015)). Plaintiffs rely on Ms. Verkhovskaya's opinion to "show that class members can be identified," which Plaintiffs recognize is a requirement at the class certification stage. Pls.' Opp'n at 4 (quoting *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017)); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012) (explaining that ascertainability requires that "those persons who will be bound by the final judgment are clearly identifiable"). But Ms. Verkhovskaya does not even attempt to fulfill that objective, thus failing *Daubert*'s "fit" requirement.

Ms. Verkhovskaya does not, and cannot, make any of the following determinations in her analysis, all of which are necessary to identify class members in this case: (1) how many of the called numbers were obtained through Home Depot, (2) how many of the call recipients received a Disclaimer Card regarding the use of an ATDS or prerecorded voice, (3) how many of the call recipients expressly consented to receiving their water test results via an ATDS or prerecorded voice, and (4) how many calls actually played a prerecorded message. Plaintiffs dismiss these critical deficiencies as a "red herring" (Pls.' Opp'n at 1), but they are central to why Ms. Verkhovskaya's opinion should be excluded at the class certification stage.

### A. Ms. Verkhovskaya Cannot Identify Which Numbers Were Obtained Through Home Depot.

The first step in ascertaining the members of Plaintiffs' proposed class is determining the source of the phone numbers dialed. Plaintiffs have known for at least two years that AWP distributed its water test kits and obtained phone numbers through a variety of channels, including but not limited to direct mail, trade shows, fairs, and hardware stores other than Home Depot. As Mr. Wunder, AWP's owner, testified in his deposition on August 18, 2016:

> **Q:** And can you give me a list of the various marketing methods that you use to generate leads, or make those introductions, as you put it?
>
> **A:** We use shared mail. We use The Home Depot, BJ's, hardware stores. We put advertising material in various locations in these stores and retail locations. We do mall shows, fairs, home shows. We have some direct mail. (Stevens Decl. Ex. 9 at 30:24-31:10.)
>
> **Q:** Do you, in fact, work with any competitors of The Home Depot?
>
> **A:** We're in other hardware stores, so, yes.
>
> **Q:** You mentioned ACE earlier. You've got some flyers in ACE and advertising materials, right?
>
> **A.** We did. Not at present.
>
> **Q.** Okay.
>
> **A.** And some independents. (Stevens Decl. Ex. 9 at 46:3-12.)

Plaintiffs have also known for at least two years that AWP has used Global Connect as its only phone service for calling participants in its water test program during the proposed class period. In Mr. Wunder's deposition, Plaintiffs may have only been interested in Home Depot, but Mr. Wunder did not so limit his answer:

4

> **Q:** Do you have any knowledge of any other manuals, other than this one, or any other systems that have been used in the past, let's say, five years, by AWP to call customers in connection with the water test program with Home Depot?
>
> **A:** <u>Global Connect is the only service that Atlantic Water Products has used</u>, and they may offer a myriad of services that I am not aware of. My understanding is that <u>I provide them with a phone number and -- of an existing customer who has received a water test by us</u>, and we contact them with the phone number they provided. (Stevens Decl. Ex. 9 at 153:2-18 (emphases added).)

Prior to Mr. Wunder's deposition, Plaintiffs received an outbound dial list from Global Connect representing "all of the calls AWP placed using Global Connect's software platform" dating back to June 29, 2012. (Stevens Decl. Ex. 10 ¶ 7.) Global Connect did *not* state that the list was limited to Home Depot, and in fact Global Connect never had anything to do with Home Depot. As Global Connect told Plaintiffs, "Global Connect did not place calls for HD and HD did not place calls through the Global Connect software platform." (Stevens Decl. Ex. 3 at *passim*.) After receiving Global Connect's outbound dial list, Plaintiffs asked Mr. Wunder about it. He explicitly told them he had no way to identify who was called for the "AWP and Home Depot water test program":

> **Q:** If I wanted to ascertain the identities of everybody who was called through the Global Connect system for the AWP and Home Depot water test program, how would I go about doing that?
>
> **A:** I have no idea. (Stevens Decl. Ex. 9 at 157:12-18.)

Yet, despite being told that (a) the Global Connect outbound dial list covered every call AWP made using that platform, (b) AWP used a variety of channels, not

5

just Home Depot, to obtain phone numbers, and (c) there was no way to ascertain who was called in relation to Home Depot, Plaintiffs contend that the Global Connect list can somehow be used to define class membership. It cannot. Plaintiffs also failed to alert Ms. Verkhovskaya to those facts, which made the Global Connect list ill-suited for her stated purpose of identifying class members by looking up the names associated with the phone numbers on that list. (Verkhovskaya Tr. (Pls.' Opp'n Ex. A) at 18:6-16.) As a result, Ms. Verkhovskaya could offer no opinion on whether any of the numbers on the Global Connect list pertained to Home Depot. (Pls.' Opp'n Ex. A at 18:17-20:11.)[1]

### B. Ms. Verkhovskaya Does Not Address Consent.

Ms. Verkhovskaya's opinion also fails to address the issue of consent, which makes it impossible for her to ascertain the identities of class members. Ms. Verkhovskaya's neglect of consent issues in this case is contrary to her own expert report in *Cordoba v. DirecTV, LLC*, 320 F.R.D. 582 (N.D. Ga. 2017), where she stated that in *Cordoba* and "in several other cases" she made efforts "to exclude those individuals with possible EBR and/or other defenses." *Id.* at 599.

---

[1] The over-inclusiveness of Global Connect's call records distinguishes this case from *Reyes v. BCA Fin. Servs., Inc.*, 2018 WL 3145807 (S.D. Fla. June 26, 2018), another of Ms. Verkhovskaya's cases, where there was no doubt that the call records were coterminous with the challenged calling program. *Id.* at *11 ("BCA's records show what telephone numbers it called using the Noble predictive dialer").

6

Here, Ms. Verkhovskaya fails to address how she would identify the recipients of AWP's calls who received a Disclaimer Card in their water test kit. (Pls.' Opp'n Ex. A at 22:20-23:13.) Contrary to Plaintiff's unsupported assertion that it does not matter whether a putative class member saw the Disclaimer Card (Pls.' Class Cert. Reply at 18), "if someone saw that slip and did not want to proceed," then "they would not provide the information" to contact them. (Stevens Decl. Ex. 1 at 201:1-11.) The Disclaimer Card and water test request form were part of the same package. "[U]nder New Jersey law, two or more writings may constitute a single contract even though they do not refer to each other," depending on "the intent of the parties." *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 306 (3d Cir. 1982). AWP certainly intended to and did read the water test request form and Disclaimer Card together, and to the extent putative class members did not, their contrary intent is an individualized issue that Ms. Verkhovsakaya does not attempt to address. *See Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 688 (D. Md. 2017) (finding "individualized issues relating to consent and revocation" would predominate where defendant "has a standard practice of seeking consent from customers").

### C. Ms. Verkhovskaya Does Not Address Whether a Prerecorded Message Actually Played.

Ms. Verkhovskaya does not attempt to address which of the calls on the Global Connect list actually involved the playing of a prerecorded message, a deficiency which sets her opinion in this case apart from her work in other cases,

7

including *Krakauer v. Dish Network, L.L.C.*, 2015 WL 5227693 (M.D.N.C. Sept. 8, 2015). In *Krakauer*, Ms. Verkhovskaya analyzed detailed call records to determine which calls were actionable, removing calls associated "with 10 different 'disposition codes' that indicated the call was not connected." *Id.* at *3. Here, however, Ms. Verkhovskaya made no attempt to determine which calls are actionable and which are not. Nor could she, because Global Connect, the only source of relevant data, "has no record of when, or even if, the recording was played." (Stevens Decl. Ex. 3 at ¶ 13.)[2]

### D. Plaintiffs' Spoliation Theory Does Not Excuse Their Rule 23 Failures.

Plaintiffs blame AWP's standard pre-litigation 90-day document retention policy for the lack of records identifying which call recipients obtained water test forms in a Home Depot store and which call recipients returned Disclaimer Cards. Pls.' Class Cert. Reply at 2, 9. But in the absence of pending or threatened litigation, AWP had no obligation to keep those records. Instead, AWP destroyed them for the purpose of following what it believed to be the law governing calls to people with

---

[2] Likewise, Plaintiffs' reliance on *In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380 (3d Cir. 2015), is also misplaced. There, the plaintiffs "identified a reliable, repeatable process whereby members of the putative class may be identified" by "consult[ing] CBNV's business records." *Id.* at 397. AWP's and Global Connect's business records in this case do not provide a comparable starting point.

whom it had established business relationships.  (Stevens Decl. Ex. 1 at 85:18-86:18.)  After Plaintiffs commenced this action, AWP retained the forms, several of which have been submitted as examples.  (*See* Wunder Decl. Ex. J.)

The absence of business records does not relieve Plaintiffs of their Rule 23 burdens.  AWP kept records for its business purposes, not to make Plaintiffs' case for them.  In another TCPA case, *Smith v. Microsoft Corporation*, the court denied class certification in part because of manageability concerns caused by a lack of business records.  297 F.R.D. 464, 471 (S.D. Cal. 2014).  In that case, a third-party retained by Microsoft destroyed (upon dissolution of the responsible subsidiary) its records of text messages sent to groups of phone numbers.  *Id*.  The court determined that because the records were destroyed, it was impossible to know whether consent for the mass-texts had been previously obtained.  *Id*.  As a result, the court concluded that "even if Plaintiff could somehow prove a lack of prior express consent, it would nonetheless be manifestly unjust to permit more than 55,000 persons to sue a company that is, for the same reasons, incapable of defending itself." *Id*. at 472.

## II. MS. VERKHOVSKAYA HAS NOT TESTED HER PROPOSED METHODOLOGY IN THIS CASE.

Even if the relevant phone numbers could be identified, Ms. Verkhovskaya's opinion still should be excluded because her reliance on testing she performed years ago at a previous employer on the phone numbers of her team's friends and family is not sufficient to satisfy *Daubert*.  (Pls.' Ex. A at 67:13-69:4.)  As Plaintiffs

9

acknowledge, "[i]n evaluating whether a particular methodology is reliable, the inquiry is a flexible one *to be tailored to the specific case*." Pls.' Opp'n at 8 (emphasis added). So it is not a matter of finding "the right key" and then never again having to test "that the key still works." Pls.' Opp'n at 6. Rather, this case involves a different lock.

Thus, Plaintiffs' citations to other cases where Ms. Verkhovskaya's opinion was not excluded are unavailing. For example, in *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2017 WL 1806583 (N.D. Cal. May 5, 2017) (where the court did strike another expert who failed to actually analyze the data in that case), Ms. Verkhovskaya analyzed the relevant call records to determine the size of the class. *Id.* at *4. Her report was not entirely prospective, as it is here. Even so, the court in *Abante* required Ms. Verkhovskaya to modify her report because it was over-inclusive of "individuals that may have consented" to the calls. *Id.* Likewise, in *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 304 (N.D. Cal. 2017), Ms. Verkhovskaya actually analyzed the data in the case, including determining the error rate of "a random sample of 9,461 such phone numbers," just to establish numerosity. *See also Lavigne v. First Cmty. Bancshares, Inc.*, 2018 WL 2694457, at *3-4 (D.N.M. June 5, 2018) (where Ms. Verkhovskaya analyzed the actual call logs in the case to establish numerosity). So too in *Mahoney v. TT of Pine Ridge, Inc.*, 2017 WL 4876213 (S.D. Fla. June 26, 2017), where the settlement

10

administrator (not a class certification expert) was charged with using the actual data in the case to facilitate settlement communications. That is a far cry from this case, where Ms. Verkhovskaya has simply looked up the name associated with "the named Plaintiff's phone number." Pls.' Opp'n at 7.

At bottom, *Southwell v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 2014 WL 3956699 (W.D. Wash. Aug. 12, 2014), is on all fours with this case, and Plaintiffs' attempt to distinguish it fails. In *Southwell*, the court gave Ms. Verkhovskaya's report no weight because it was "entirely prospective," even though she proposed to do the same thing she proposes here and in other cases—determine to whom particular phone numbers belonged. *Id.* at *4. Performing such analysis on the data in the case *after* she submitted her declaration was not enough. *Id.* Furthermore, the court in *Southwell* also discounted another expert who used "parameters" set by plaintiff's counsel and had "no independent opinion on whether they are accurate representations of what [p]laintiffs purport them to mean." *Id.* at *3. Here, Ms. Verkhovskaya "will rely on counsel's representation" regarding what calls "pertained to the Home Depot water test program." (Pls.' Opp'n Ex. A at 24:25-25:3; *see also id.* at 30:9-17 ("I received the Plaintiffs' phone number, and the representations from Plaintiffs' counsel that they have a list of telephone numbers … no other documents or information were provided").) This lack of independent analysis was exactly the problem in *Southwell*, and it requires exclusion here as well.

11

## CONCLUSION

For these reasons, Defendants respectfully request that the Court strike the expert report of Plaintiffs' expert Anya Verkhovskaya.

Respectfully submitted this 21st day of September, 2018.

*/s/ Nicholas Stevens*

Nicholas Stevens
nstevens@starrgern.com
STARR, GERN, DAVISON & RUBIN, P.C.
105 Eisenhower Parkway
Suite 401
Roseland, New Jersey 07068
(973) 403-9200
(973) 226-0031 (facsimile)

S. Stewart Haskins
J. Andrew Pratt
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
Tel:  404.572.4600
Fax:  404.572.5100
shaskins@kslaw.com
apratt@kslaw.com

*Counsel for Defendant Home Depot U.S.A., Inc.*

Jack G. Zurlini, Jr.
BERENSON LLP
308 W. 1st Ave. Ste. 303
Spokane, WA 99201
jgz@berensonllp.com

Laura D. Ruccolo

CAPEHART SCATCHARD
8000 Midlantic Dr., Ste 300S
Post Office Box 5016
Mount Laurel, NJ 08054
lruccolo@capehart.com

*Counsel for Defendant
Atlantic Water Products Inc.*

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed a true and correct copy of **DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE THE OPINION OF, AND BAR TESTIMONY BY, ANYA VERKHOVSKAYA, as well as a SUPPORTING DECLARATION,** with the Clerk of the Court using the ECF system, which will send notification of such to all counsel of record.

Dated: September 21, 2018.

*/s/ Nicholas Stevens*
Nicholas Stevens