## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AARON MANOPLA and EVELYN MANOPLA, on behalf of themselves and all other similarly situated<br><br>                    Plaintiffs,<br><br><br>          v.<br><br><br>HOME DEPOT USA, INC., ATLANTIC WATER PRODUCTS and JOHN DOES 1-25,<br><br>                    Defendants. | Civil Action No. 3:15-cv-01120-PGS-TJB |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY APPROVAL

---

*On the brief:*
Ross H. Schmierer, Esq.

<u>T<small>ABLE OF</small> C<small>ONTENTS</small></u>

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

  A. Facts................................................................................................................ 2

  B. Procedural History ........................................................................................ 2

  C. Discovery and First Mediation..................................................................... 3

  D. Significant Motion Practice .......................................................................... 4

  E. THE PROPOSED SETTLEMENT TERMS ............................................... 7

    1. Settlement Class. ........................................................................................ 7

    2. Monetary Relief. ........................................................................................ 8

      a. *Plaintiffs' Service Awards.* .................................................................. 9

      b. *Attorneys' Fees and Costs.* ................................................................. 9

      c. *Administration Costs* ........................................................................ 12

      d. *Settlement Class Payments* .............................................................. 12

    3. Settlement Class Notice. ......................................................................... 13

III. ARGUMENT .................................................................................................. 15

  A. PRELIMINARY APPROVAL SHOULD BE GRANTED ......................... 15

  B. The Proposed Settlement Satisfies Rule 23(e)(2), Revised on December 1, 2018 ........ 18

    1. *Plaintiffs Have Adequately Represented the Class* .............................. 19

    2. *The Settlement Negotiations Occurred at Arm's Length.* ..................... 19

    3. *The Relief Provided for the Class is Adequate* .................................... 21

    4. *The Class Members Are Treated Equitably Relative to Each Other* ............ 24

IV. THE PROPOSED CLASS SATISFIES FED. R. CIV. P. 23 ..................... 24

  A. Rule 23(a) Requirements ............................................................................. 25

    1. *Numerosity is Satisfied* ......................................................................... 25

    2. *Commonality is Satisfied.* ..................................................................... 26

    3. *Typicality is Satisfied.* ........................................................................... 28

    4. *Adequacy of Representation.* ................................................................. 29

  B. Rule 23(b)(3) Requirements. ....................................................................... 29

    1. *Common Questions of Law and Fact Predominate Over Individual Ones* ........ 29

    2. *A Class Action is the Superior Method for Resolving the Class Claims* ........ 32

V. THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ............ 33

VI. THIS COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING ........ 34

VII. CONCLUSION ............................................................................................ 355

<u>T</u>ABLE OF <u>A</u>UTHORITIES

**Cases**

*ACA Int'l v. Fed. Communications Comm'n*, 885 F.3d 687 (D.C. Cir. 2018) ............................ 6

*Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) ............................................................................................................ 20

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................... 28, 34, 37, 38

*American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) ..................................................................................... 12

*Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC,* Case No. 11 CV 11, 2015 WL 12866997 (D. N.J. Jan. 26, 2015) .................................................................... 12

*Barani v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 49838 (C.D. Cal. Sep. 8, 2014) 35

*Beck v. Maximus, Inc.*, 457 F.3d 291 (3d Cir. 2006) ....................................................... 32

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) ..................................... 24

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ............................................................. 10

*Bonett v. Educ. Debt Servs.,* No. 01-6528, 2003 U.S. Dist. LEXIS 9757 (E.D. Pa. May 9, 2003) .................................................................................................. 29

*Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540 (D.N.J. 1999) .......................................... 34

*Cavin v. Home Loan Ct., Inc.*, 236, F.R.D. 387 (N.D. Ill. 2006) ........................................... 38

*Collier v. Montgomery County*, 192 F.R.D. 176 (E.D. Pa. 2000) ............................................ 18

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) ........................................... 19

*Doherty v. Hertz Corp.*, Case No. 10-359, 2014 WL 2916494 (D. N.J. June 25, 2014) ............. 10

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482 (E.D. Pa. 1985) .......................... 18

*Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560 (7th Cir. 1994) .................................... 10

*Garretv. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) ... 19

*Gates v. Rohm & Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008) ................................................ 23

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) ................................................ 37

*Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975) ............................................................ 18

*Hanrahan v. Britt*, 174 F.R.D. 356 (E.D. Pa. 1997) ...................................................... 22

*Hashw v. Dep't Stores Nat'l Bank*, No. 13-727 (RHK/BRT), 2016 U.S. Dist. LEXIS 61004 (D. Minn. 2016) .................................................................................... 20, 21

*Hawk Valley, Inc. v. Taylor*, Case No. 10-cv-804 (E.D. Pa. Aug. 6, 2015) ................................ 12

*Imhoff Investment, LLC v. Sammichaels, Inc.*, Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) .................................................................................................. 12

*In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) ........................................................................ 25

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ........................................ 10

*In re Bulk Extruded Graphite Prods.*, 2006 U.S. Dist. LEXIS 16619 (D.N.J. April 4, 2007) ..... 30

*In re Capital One TCPA Litig.*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) ..... 20, 26

*In re CIGNA Corp. Sec. Litig.*, No. 02-8088, 2007 U.S. Dist. LEXIS 51089, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ........................................................................... 23

*In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005) ................................................ 28

*In re Gen. Motors Truck Litig.*, 55 F.3d 768 (3d Cir. 1995) .................................. 16, 17, 19, 24

*In re Linerboard Litig.*, 296 F. Supp. 2d 568 (E.D. Pa. 2003) ...................................... 18, 22

*In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180 (D.N.J.2003) ...................................... 35

*In re Prudential Ins. Co. America Sales Litig.*, 148 F.3d 283 (3d Cir. 1998) ............. 10, 17, 32, 34

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ...................................................... 10

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ............................................ 17

*In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, Case No. 1:13-md-02493-JPB-JES
  (N.D.W.V. June 12, 2018) ...................................................................................................... 26

*Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 15, 2015)
  ................................................................................................................................................ 12

*Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178 (3d Cir. 2001) ................................................ 30

*Kaye v. Amicus Mediation & Arbitration Grp., Inc.*, 300 F.R.D. 67 (D. Conn. 2014) .......... 37

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ............................................................................ 32

*Kevin Amini, et al. v. Heart Savers, LLC*, 2016 WL 10621698 (C.D. Cal. Oct. 17, 2016) ... 36

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) .......................................................... 26

*Labbate-D'Alauro v. GC Servs. Ltd. P'ship,* 168 F.R.D. 451 (E.D. N.Y. 1996) ...................... 37

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 Fed. Appx. 880 (3d Cir. 2016)10, 11, 35

*Lushe v. Verengo Inc.*, No. CV 13-07632 AB R (C.D. Cal. May 2, 2016) .................................. 26

*Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038 (S.D.
  Cal. June 20, 2016) ......................................................................................................... 19, 27

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) .................................................. 30

*Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017)........................ 26

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ................................. 11

*Melito v. Am. Eagle Outfitters, Inc.*, No. 14 Civ. 2440 (VEC), 2017 WL 3995619 (S.D.N.Y.
  Sept. 11, 2017) .............................................................................................................. 31, 33, 37

*Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036 (9th Cir. Cal. 2012) ........................ 33

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................................ 38

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) ............... 30

*Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 436 (E.D. Pa. 2002) .............................. 16

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................................... 39

*Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13-1347-JCC (W.D. Wash. April 19, 2016).......... 26

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013) ....................................................... 31

*Rose v. Bank of Am. Corp.*, No. 11 Civ. 02390, 12 Civ. 04009, 2014 WL 4273358 (N.D. Cal.
  Aug. 29, 2014) ....................................................................................................................... 26

*Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb.
  9, 2016) .................................................................................................................................. 12

*Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, Case No. 10-cv-331 (E.D. Wis. July 19,
  2013) ...................................................................................................................................... 11

*Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947 (M.D. La.
  May 23, 2013) ........................................................................................................................ 19

*Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) ...... 20

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352 (N.D. Cal. Mar. 10, 2014)
  ................................................................................................................................................ 26

*Stern v DoCircle, Inc.*, 2014 WL 486262 (C.D. Cal. Jan. 29, 2014)............................................ 36

*Stewart v. Abraham,* 275 F.3d 220 (3d Cir. 2001)....................................................................... 30

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ............................................. 17, 28

*Van Sweden, Inc. v. 101 VT, Inc.*, Case No. 10-cv-253 (W.D. Mich. July 30, 2015).................. 12

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) ........................................ 34

*Wal-Mart Stores Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................................ 16

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ........................................................ 30, 31

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ...................................................... 18

*Weisfeld v. Sun Chem. Corp*., 210 F.R.D. 136 (D.N.J. 2002) ................................................. 35

*West Virginia v. Chas. Pfizer & Co*., 314 F. Supp. 710 (S.D.N.Y. 1970) ................................... 24

*Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729 (N.D. Ill. 2016) ......................................................................................................... 20

*Zeidel v. A&M* (2015) LLC, No. 13 Civ. 6989, 2017 WL 1178150 (N.D. Ill. March 20, 2017) 32, 33

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ........................................... 1, 25, 37

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002). passim

4 William B. Rubenstein, Newberg on Class Actions (5th ed.) ..................................................... 22

William B. Rubenstein, Newberg on Class Actions (5th ed. 2016 Supp.) ................................... 16

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... passim

## I.      __INTRODUCTION__

Subject to court approval, plaintiff Aaron Manopla ("Aaron") and plaintiff Evelyn Manopla ("Evelyn") (hereinafter collectively referred to as the "Plaintiffs" or "Class Representatives") have reached a settlement with Defendant Home Depot U.S.A., Inc. ("Home Depot") and Defendant Atlantic Water Products, Inc. d/b/a Atlantic Water and Air ("AWP") (collectively "Defendants") (hereinafter "Plaintiffs" and "Defendants" shall be collectively referred to as the "Parties") in this proposed class action brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.  The settlement requires Defendants to pay Four Million Three Hundred Fifty Thousand Dollars and Zero Cents ($4,350,000.00) to establish a non-reversionary settlement fund for the benefit of Plaintiffs and Settlement Class Members (as defined below) who received telephone calls from or on behalf of Defendants or their agents and/or employees made through the use of any automatic telephone dialing system ("ATDS") or with an artificial or prerecorded voice between October 16, 2013 and June 1, 2015.  All Settlement Class Members who timely submit a simple claim form will receive a cash payment.  Plaintiffs respectfully submit that the proposed settlement resolves Plaintiffs' claims on a class wide basis, ends this litigation and satisfies all of the criteria for preliminary settlement approval.

Accordingly, Plaintiffs request that this Court enter an order which (i) preliminarily approves the Class Settlement Agreement ("Settlement Agreement") with Home Depot and AWP attached to the Declaration of Ross H. Schmierer ("Schmierer Decl.") as Exhibit 1 and submitted herewith; (ii) certifies for settlement purposes the Settlement Class as defined in Paragraph II of the Settlement Agreement; (iii) appoints Ross H. Schmierer and Stephen P. DeNittis of DeNittis Osefchen Prince, P.C., Ari Marcus of Marcus & Zelman, LLC, and Todd Friedman of Law Offices of Todd M. Friedman, P.C., as Class Counsel; (iv) appoints Plaintiffs as representatives of the

Settlement Class; (v) sets dates for Settlement Class Members to opt-out of, or object to, the Settlement Agreement; (vi) schedules a hearing for final approval of the Settlement Agreement; (vii) approves the notices to Settlement Class Members in the form of Exhibits B, C, D and F, to Exhibit 1 of the Schmierer Decl.; and, (viii) finds that the proposed notice satisfies the requirements of due process. A copy of the proposed preliminary approval order is attached as Exhibit E to Exhibit 1 of the Schmierer Decl.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Facts

In January 2015, Plaintiffs filed this class action alleging that AWP, acting on behalf of Home Depot, made telemarketing prerecorded calls and/or utilized an ATDS without obtaining "prior express written consent" to make such telemarketing calls, as required by the TCPA.  *See* Third Amended Complaint ("Complaint"), Doc. #32.   AWP and Home Depot deny all material allegations of the Complaint.  *See* Home Depot Answer, Doc. #34, AWP Answer, Doc. #35.   This case has been hard-fought by experienced counsel on both sides for over four years.  As set forth more fully below, this case was actively litigated and involved: (i) extensive written discovery; (ii) the taking of several fact and expert depositions; (iii) engaging in significant motion practice, including motions to dismiss, motions for summary judgment and a §1292(b) appeal of the same.

### B.  Procedural History

Initially, Plaintiffs filed a complaint in this matter solely against Home Depot.  *See* Doc. #1.   Thereafter, Home Depot interposed an answer (Doc. #8) and the Court subsequently scheduled a Rule 16 Conference for May 12, 2015.  *See* Doc. #9.  Shortly thereafter, however, Plaintiffs were made aware that AWP should also be a defendant in this matter.  As such, Plaintiffs amended the pleading to bring AWP into this lawsuit. *See* Doc. #10.  In response to our

amended pleading, AWP filed a motion to dismiss arguing that the complaint failed to support "the [Plaintiffs'] conclusory allegation that an automatic telephone dialing system ["ATDS"] was used to make the alleged calls." *See* Doc. 15 at pg. 2. By contrast, Home Depot simply interposed an Answer. *See* Doc. #16. AWP's motion resulted in the adjournment of the Rule 16 Conference.

In response to AWP's motion, Plaintiffs cross-moved seeking to file an amended pleading and pointed the Court to the FCC's recent ruling regarding ATDS. *See* Doc. #21. In turn, AWP claimed this amendment of the complaint would be futile and argued that the FCC Ruling and Order regarding the ATDS definition was unconstitutionally overbroad or vague. *See* Doc. # 22. Thereafter, the Court entertained extensive oral argument and ultimately granted Plaintiffs' cross-motion and denied AWP's motion. *See* Doc. #27.

### C.  Discovery and First Mediation

Plaintiffs respectfully submit that the discovery in this case was substantial. After the initial conference held on September 28, 2015, the Parties propounded their first set of written discovery requests. Plaintiffs' written discovery requests: (i) targeted Defendants' alleged telemarketing policies and practices; (ii) sought information and correspondence relating to the relationship between Home Depot and AWP as well as their vendors; and (iii) sought calling data necessary to establish the scope of the alleged TCPA violations. Following several meet and confer letter exchanges and telephone calls, the Parties exchanged certain paper discovery in response to the same.

Thereafter, the Defendants deposed Evelyn and Aaron in January 2016. Schmierer Decl., ¶11. In addition to this deposition, Plaintiffs took the Rule 30(6)(6) deposition of Home Depot on March 18, 2016 in Atlanta, Georgia. Schmierer Decl., ¶ 11.

Following the initial exchange of written discovery and the aforementioned depositions, the Parties agreed to mediate with the Honorable Joel B. Rosen (Ret.), an experienced class action mediator.   After spending an entire day with Judge Rosen, the mediation was ultimately unsuccessful. Schmierer Decl., ¶ 12.

After the unsuccessful mediation attempt with Judge Rosen, the Parties engaged in additional written discovery.   In response to Plaintiffs' discovery demands, the Defendants produced thousands of pages of documents and correspondence, including documents regarding the relationship between AWP and Home Depot. Schmierer Decl., ¶ 13.  Thereafter, the Plaintiffs took the Rule 30(6)(6) deposition of AWP on August 18, 2016.  Schmierer Decl., ¶ 13.

In addition to this discovery, the Plaintiffs engaged in additional third-party discovery, seeking and obtaining documents and information from non-party Global Connect, the vendor AWP utilized to make the calls at issue herein.  Schmierer Decl., ¶ 14.  The Plaintiffs also engaged in third party discovery with Happle Printing, the vendor AWP used to print the forms containing the water test kit at issue in this litigation.  Schmierer Decl., ¶ 14. All fact discovery in this matter closed on November 8, 2016.  *See* Doc. #45.

### D.  Significant Motion Practice

After fact discovery closed, AWP and Home Depot sought permission to brief summary judgment before class certification.  In granting this request, the Court stated that if the matter survived summary judgment, the Court would then set a schedule for class certification briefing. *See* Doc. #45.  Thereafter, AWP and HD both made their own Motions for Summary Judgment. *See* Doc. #49 and #50, respectively.

Specifically, in its Motion, AWP claimed that: (i) Plaintiffs provided prior express consent for AWP to call them on their cell phone; (ii) AWP's call to them was informational and not a

4

telemarketing call; and (iii) the Plaintiffs did not have Article III standing.  For its own separate motion, HD joined in AWP's arguments and additionally argued that: "[i] Plaintiffs cannot establish that Home Depot is vicariously liable for AWP's conduct, [ii] Plaintiffs expressly consented to being called on their cellular telephone with regard to the water test, and [iii] Plaintiffs have suffered no concrete harm from AWP's alleged use of an ATDS or prerecorded voice." *See* Doc. # 50-6 at pg. 7.

After extensive briefing and a lengthy oral argument, this Court denied both motions on September 29, 2017. *See* Doc. #64.   Specifically, this Court made the following rulings: (i) the first call to the Plaintiffs "clearly shows some type of ATDS was utilized"; (ii) the water purity test form "did not disclose that the an ATDS would be used"; (iii) the written consent was inadequate under the TCPA "because there was no showing that the Manoplas had a clear and unmistakable intent to allow solicitation calls from an ATDS"; (iv) "Home Depot retained substantial control over the arrangement with Atlantic Water through an agreement, which provided for the monitoring and management of the work"; (v) "Home Depot's logos were utilized on the booth and on some of the work clothes of the Atlantic Water representatives"; and (vi) "there is some type of agency relationship between AWP and HD that is an issue that must be decided by the trier of fact."  Doc. #67.

Thereafter, in the beginning of October, 2017, the parties met and conferred and submitted a Class Certification briefing schedule wherein the Plaintiffs agreed to file their class certification motion by January 29, 2018.  *See* Doc. #66.

Before filing the class certification motion, however, the Defendants filed a motion pursuant to §1292(b) challenging the Court's ruling on summary judgment.  *See* Doc. # 68, Doc. #69.  Once again, this motion required extensive briefing.  The Court denied the motion and

emphasized that the first call "did not serve only informative purposes."  Rather, the Court found it was telemarketing as that term is defined under the TCPA because "the call initiated in this case clearly sought to encourage Plaintiff to hire the company for services, namely in-home water testing."  *See* Doc. # 76.

Following this §1292(b) ruling, the Plaintiffs submitted a robust and comprehensive class certification motion, which was filed on February 23, 2018.  *See* Doc. 78.

On March 17, 2018, the parties submitted a proposed Order setting out the expert discovery schedule as well as the rest of Class Certification briefing. On March 19, 2018, the Court entered the schedule. *See* Doc. #81.  Per the Order, the Defendants deposed both of Plaintiffs' experts by June 7, 2018.  Schmierer Decl., ¶ 21.  Thereafter, the Plaintiffs furnished their expert reports.

On July 10, 2018, counsel for AWP wrote to Magistrate Judge Bongiovanni seeking permission to file a motion to stay all proceedings, or, in the alternative, for summary judgment, based on a recent decision vacating, in part, a certain FCC ruling in the case *ACA Int'l v. Fed. Communications Comm'n*, 885 F.3d 687 (D.C. Cir. 2018).  The next day, the Plaintiffs submitted a detailed letter to Magistrate Judge Bongiovanni asking the Court deny such a request.  Schmierer Decl., ¶22. Thereafter, the Court set a telephone conference for the end of July.

On July 27, 2018, the Defendants filed their opposition to the class certification motion as well as a *Daubert* motion seeking to exclude Plaintiffs' expert.  *See* Doc. #86.  Thereafter, the Court held a phone conference wherein the Parties were directed to fully brief the pending motions and then advise the Court if settlement discussions were appropriate prior to oral argument on the motions.  Schmierer Decl., ¶ 23.

On August 31, 2018, the Plaintiffs' filed their reply in support of the motion to certify class as well as their opposition to Defendants' motion to strike their expert. *See* Doc. 90, 91. Defendants' duly filed their reply to the motion to strike on September 21, 2018. *See* Doc. 92.

After these motions were fully briefed for the Court, the parties engaged in several meet and confer email exchanges and conference calls to discuss a potential second mediation. On October 1, 2018, the Parties agreed to engage in a second mediation with Hunter R. Hughes, III, Esq., an experienced class action mediator. Schmierer Decl. ¶ 25. By the time the Parties commenced the settlement negotiations in this second mediation, they fully understood the size of the proposed class, the strengths and weaknesses of the case, the Court's views on certain key issues as well as the potential extent of class wide damages. *Id*.

On November 30, 2018, the Parties participated in private mediation with Mr. Hughes in Atlanta, Georgia. *Id*. ¶ 26. After a full day of mediation, the Parties were unable to reach a settlement. *Id*. However, prior to breaking, the Parties agreed to consider a mediator's proposal on a settlement amount, which the Parties both conditionally accepted on December 10, 2018, with the understanding they would then negotiate other material terms. *Id*. Afterward, the Parties began working towards negotiating the remaining settlement terms. *Id*. After months of extensive, adversarial negotiations, the Parties negotiated the Class Action Settlement and Release, attached as Exhibit 1 to the Schmierer Decl., which was fully executed by the Parties.

### E.  THE PROPOSED SETTLEMENT TERMS

A summary of the Parties' proposed settlement is as follows.

1. <u>Settlement Class</u>.

The Parties have stipulated to certification, subject to court approval, of the following class for settlement purposes only:

All persons or entities within the United States who received any telephone calls from or on behalf of Defendants or their agents and/or employees made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice between October 16, 2013 and June 1, 2015.

The "Settlement Class" means all members of this class who do not validly opt out of the Settlement and are not otherwise validly excluded. It was determined through discovery that the Settlement Class consists of **24,074** unique phone numbers.

      2.    <u>Monetary Relief.</u>

The proposed Settlement establishes a class settlement fund of $4,350,000, which the Class Administrator, Kurtzman Carson Consultants LLC ("KCC") ("Class Administrator") will distribute among those Settlement Class Members who submit valid claims, and who do not exclude themselves from the Settlement ("Claimants").  Valid Claims will be paid from the Common Fund after the Claims Period has concluded and after the settlement becomes Final. Each Class Member who qualifies for Payment from filing a Valid Claim shall receive a *pro rata* payment from the Common Fund after the Claims Period has concluded.  Depending on the number of Valid Claims received, the amount of the payment each Class Member will receive may be increased or reduced on a pro-rata basis.  The maximum payment each Class Member may receive is $5000. [Settlement Agreement, ¶ 3.4]. Valid Claimants will receive a check, which will be void one hundred and eighty (180) days from the date it is issued. [Settlement Agreement, ¶ 3.8].

Any cash remaining in the Cash Settlement Fund – after payment of all timely Claims of Class Members, the Class Counsel Fees and Expense Award, as approved by the Court, the Incentive Awards to the Class Representative(s), as approved by the Court, and the Administrative Fee of the Settlement Administrator, as approved by the Court – shall be donated by *cy pres* award

to the recipients, Legal Services of New Jersey and Clean Water Action, to be approved by the Court.  No portion of the Settlement Fund will return to Defendants.

       a.     *Plaintiffs' Service Awards*.

Plaintiffs shall move the Court for an incentive award not to exceed $7,500.00 to Evelyn and $7,500.00 to Aaron to be paid out of the Settlement Fund. [Settlement Agreement, ¶ 4.2].  The Court need not decide whether to approve a service award now; Plaintiffs' counsel shall file a motion for approval of fees, costs, and a service award with its motion for final approval of the settlement.

       b.     *Attorneys' Fees and Costs*.

Plaintiff shall move the Court for an award of attorneys' fees in an amount not to exceed thirty five percent (35%) of the total $4,350,000 value of the Settlement Fund ($1,522,500), plus reimbursement of Class Counsels' costs and expenses in the amount not to exceed $50,000. Defendants have agreed not to oppose this motion. [Settlement Agreement, ¶ 4.1].

The Court need not rule on fees and costs now; Plaintiffs' counsel will file a formal motion for approval of fees, costs, and a service award with its motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h).  Although Plaintiffs' counsel shall fully brief this issue and provide support for the same, it is well recognized that the attorneys' contingent risk is an important factor in determining the fee award.  *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994).  The attorneys who create a benefit for the class members are entitled to compensation for their services.  The Third Circuit has explained that "[t]he percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec.*

*Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (quoting *In re Prudential Ins. Co. America Sales Litig.*, 148 F.3d 283, 312 (3d Cir. 1998), cert. denied, 525 U.S. 1114 (1999).

In *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980), the Supreme Court stated that the right of absentee class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." "[T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump–sum judgment recovered on his behalf." *Boeing*, 444 U.S. at 479; *see also Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 Fed. Appx. 880, 883-84 (3d Cir. 2016); *Doherty v. Hertz Corp.*, Case No. 10-359, 2014 WL 2916494 at *6-7 (D. N.J. June 25, 2014) citing (*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 177 (3d Cir. 2013) ("The Court finding, based on Plaintiffs' supplemental briefing, that the law supports an award of reasonable attorney's fees to Class Counsel based on the gross settlement—the monies potentially available to be claimed—without regard to the amount actually claimed by Class Members.")).

Fee awards are based upon the entire fund available to be claimed, even when the entire fund is not claimed by class members. *Id.*; *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."); 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p. 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a

reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed).

Here, Class Counsel's request for 35% of the Settlement Amount is within the market rate for TCPA cases. *See, e.g., Sawyer v. Atlas Heating and Sheet Metal Works, Inc*., Case No. 10-cv-331 (E.D. Wis. July 19, 2013) (Doc. 59) (awarding 35% of fund); *Skinder-Strauss*, 639 Fed. Appx. 880 (awarding one third of fund); *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC,* Case No. 11 CV 11, 2015 WL 12866997 (D. N.J. Jan. 26, 2015) (same); *Hawk Valley, Inc. v. Taylor*, Case No. 10-cv-804 (E.D. Pa. Aug. 6, 2015) (Doc. 193) (same); *Imhoff Investment, LLC v. Sammichaels, Inc*., Case No. 10-cv-10996 (E.D. Mich. Nov. 2, 2016) (Battani, J.) (Doc. 120) (same); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc*., Case No. 09-cv-1162 (W.D. Mich. Mar. 1, 2016) (Doc. 278) (same); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (same); *Van Sweden, Inc. v. 101 VT, Inc*., Case No. 10-cv-253 (W.D. Mich. July 30, 2015) (Doc. 245) (same); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 15, 2015) (Tarnow, J.) (Doc. 90) (same).

Class Counsel undertook this case on a contingency basis and achieved an excellent result in a fair and efficient manner. Class Counsel delivered significant benefits to the Settlement Class in the face of numerous obstacles and significant motion practice.  The proposed Notice informs the Settlement Class about the requested attorneys' fees and expenses, so that if any class member wishes to object, he or she can do so.  If the Court finds that the settlement is fair, reasonable, and adequate, then Class Counsel will ask the Court to approve the payment of fees to Class Counsel in an amount equal to 35% of the Settlement Amount, plus out of pocket litigation expenses not to exceed $50,000.

     *c.     Administration Costs*

KCC has been retained to administer the settlement and process claims. Schmierer Decl. ¶ 29.  KCC shall be responsible for preparing and sending notice (via email and U.S. mail and in media publications), fielding questions from Settlement Class Members, establishing and maintaining a settlement website, processing claims, serving CAFA notice, and issuing checks to all members of the Settlement Class who file claims.  KCC estimates notice will cost $127,344, a competitive bid based on the class size and scope of notice.  Schmierer Decl. ¶ 29.

     *d.     Settlement Class Payments*

The remainder of the Settlement Fund, approximately **$2,635,156** [1] will be distributed on a *pro rata* basis to all Settlement Class Members who submit a valid and timely claim form. Settlement Agreement ¶ 3.1. Assuming the Court awards the requested attorneys' fees and litigation expenses, Plaintiffs estimate that each Settlement Class Member who submits a claim will receive approximately **$1100**, based on a **ten** percent claims filing rate. Schmierer Decl. ¶ 27. However, that number could go up or down depending on the number of claims filed with the maximum amount of $5,000 per class member. Settlement Agreement ¶3.4.  *Id.*

To receive a cash payment, Settlement Class Members must submit a claim form, by mail, email or through the Settlement Website. Settlement Agreement ¶ 3.5.  Regardless of the method by which they submit their claims, Settlement Class Members only need to sign the claim form declaring that the information is correct. *Id.*, Exh. 1. Although Settlement Class Members should include the cellular telephone number to which Defendants allegedly called, no further documentation or proof is required. *Id.*

---

[1] Total Fund ($4,350,000) – Fees Requested ($1,522,500) – Maximum Costs ($50,000) – Service Award ($15,000) – Estimated Administration Costs ($127,344) = Net Fund ($2,635,156).

Once all the claims have been received, the Settlement Administrator will calculate the amount of an individual Settlement Class Member's award on a *pro rata* basis after deducting any court-awarded attorneys' fees, litigation costs, notice and settlement administration expenses, and any court-awarded service award for the named Plaintiffs.

        3.    <u>Settlement Class Notice.</u>

The Settlement Administrator within 30 days of Preliminary Approval of the Settlement, will send via email an Email Notice to the Class Members defined by the Settlement Class for whom AWP has email addresses in its possession. The Settlement Administrator within 50 days of the Preliminary Approval of the Settlement, shall send out a second Email Notice to the Class Members defined by the Settlement Class for whom AWP has email addresses in its possession. In addition, the Settlement Administrator will send via U.S. mail a Class Postcard Notice to Class Members defined by the Settlement Class for whom AWP has a valid postal address but no email address. The Class Email Notice and Postcard Notice will contain information informing Class Members of (i) the preliminary approval of the Settlement; (ii) the scheduling of the Final Approval Hearing; and (iii) the website information for Class Members to obtain a Claim Form, (*see* Exhibit A to Exhibit 1 of Schmierer Decl.), in order to submit a claim. The form of this Email Notice shall be agreed upon by the Parties in substantially the form attached as Exhibit B to Exhibit 1 of the Schmierer Decl. and the form of this Postcard Notice shall be agreed upon by the Parties in substantially the form attached as Exhibit C, both as shall be approved by the Court prior to dissemination.

The Settlement Administrator shall be responsible, subject to Court approval, for emailing the Class Email Notice or mailing the Class Postcard Notice to all persons whom AWP's records indicate may be Class Members, at their last known email or postal addresses. Should the

Settlement Administrator receive any undelivered Class Email Notices or Class Postcard Notices, it will conduct one skip trace or postal look-up to search for a new address for the said Class Member and resend the Class Postcard Notice to any newly found Class Member address.

The Settlement Administrator shall be responsible, subject to the Court approving the same, for posting the Publication Notice online and at other media outlets as determined by the Settlement Administrator and approved by the Court. The Class Publication Notice shall be agreed upon by the Parties in substantially the form attached as Exhibit F.

The Settlement Administrator shall create a Settlement Website, www.AWP-HomeDepotTCPA.com, which will contain information describing the settlement and will contain the Class Postcard Notice, the Class Long Form Notice, the Claim Form, Class Counsel's contact information, a copy of the Settlement Agreement, and a copy of Plaintiffs' Third Amended Complaint. The cost for the Settlement Website will be paid to KCC from the Settlement Fund. The Class Postcard Notice and the Class Long Form Notice and Claim Form will also be posted by Class Counsel in a prominent location on Class Counsel's website www.denittislaw.com.

Any Settlement Class member may choose to be excluded from the Agreement by opting out within the time period set by this Court. Any Settlement Class member who validly opts out of the Settlement Class and Agreement shall not be bound by any prior Court order or the terms of the Agreement. [Settlement Agreement, ¶¶ 6.1-6.4]. Settlement Class members may also object to the Agreement and, if they choose to do so, they may also appear and be heard at the fairness hearing. [Settlement Agreement, ¶ 7.1-7.2].

### III.    <u>ARGUMENT</u>

### A. PRELIMINARY APPROVAL SHOULD BE GRANTED

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 436, 439-40 (E.D. Pa. 2002). Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Wal-Mart Stores Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (observing there is a "strong judicial policy in favor of settlements, particularly in the class action context"); *see also* William B. Rubenstein, Newberg on Class Actions ("Newberg") § 13.1 (5th ed. 2016 Supp.) (citing cases).  Indeed, the Third Circuit has repeatedly articulated the numerous benefits of settlements: the conservation of valuable judicial resources; avoiding high costs of litigation for both parties; and providing an optimal way to distribute damages to injured plaintiffs that would otherwise have to wait throughout the often lengthy, exhaustive litigation process.  *In re Gen. Motors Truck Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (noting presumption of favoring voluntary settlement agreements in class actions due to promotion of amicable resolution of disputes and lightening judicial load).  The proposed settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

Preliminary approval is the first of essentially three steps that comprise the approval procedure for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. The third step is a settlement approval or final fairness hearing.

*See* MANUAL FOR COMPLEX LITIGATION 4TH, § 21.63 (2004), available at http://www.fjc.gov ("*MANUAL*").  This procedure safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* Newberg § 13.1.

While a settlement class must satisfy each of the requirements of Rule 23(a) and Rule 23(b)(3), "the fact of settlement is relevant to a determination of whether the proposed Class meets the requirement imposed by the Rule." *Prudential*, 148 F.3d at 308-09.

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable. *MANUAL* at § 21.62. The approval of a proposed settlement of a class action is a matter within the broad discretion of the trial court. Of course, settlements of class actions are favored in the law. *See Gen. Motors*, 55 F.3d at 784. Preliminary approval does not require the trial court to affirmatively answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate. That determination is made only after notice of the settlement has been given to the members of the class and after they have been given an opportunity to voice their views of the settlement or be excluded from the class. *See In re Linerboard Litig*., 296 F. Supp. 2d 568, 577-78 (E.D. Pa. 2003) (citing factors established in *Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975)).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires an evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa. 2000) (citing factors established in *Girsh*). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See Collier*, 192 F.R.D. at 186; *Fisher Bros. v. Cambridge-Lee Indus., Inc*., 630 F. Supp. 482, 487-88 (E.D. Pa. 1985).

In addition to being substantively reasonable in relation to the risks and likely rewards of litigation, the proposed settlement must be "the result of good faith, arms-length negotiations." *Collier*, 192 F.R.D. at 184. In evaluating this requirement, courts proceed as follows:

> If the proposed settlement appears to be the product of serious informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class Representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class Members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

*Id.*

A finding that these factors are present establishes an initial presumption of fairness. *Id.*; *see also Gen. Motors*, 55 F.3d at 785-86. Here, the proposed settlement meets these standards. The proposed settlement was achieved after a full day's mediation with Hunter Hughes, after careful consideration of the mediator's proposal, and after the parties briefed, and the Court ruled upon, many of the substantive issues at issue herein. Moreover, the expected recovery for the Settlement Class Members of approximately **$1100** based on a ten percent claims rate ***well exceeds*** other TCPA class settlements[2]. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (settlement amount favored final approval, where claims rate resulted in *pro rata* payment of approximately $13.75 per class member); *Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038, at *4 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947, at *2, *9 (M.D. La. May 23, 2013) (final approval for up to $15 for each claimant); *Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (claimants received

---

[2] Even if *every* single member of the Settlement Class filed a claim (which is extremely unlikely) they would still receive $110 well over other TCPA settlement.

17

between $27.42 and $28.51); *Hashw v. Dep't Stores Nat'l Bank*, No. 13-727 (RHK/BRT), 2016 U.S. Dist. LEXIS 61004 (D. Minn. 2016) (finally approving settlement where "each claimant will receive approximately $33.20"); *In re Capital One TCPA Litig.*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval were each claimant would be awarded $39.66); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, *28 (N.D. Ill. 2016) (finally approving "$45.00 recovery per claimant"); *Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855, at *4, *11-*12 (N.D. Cal. Mar. 31, 2014) ($46.98 to each claimant).  Here, each class member who submits a valid claim shall receive a *pro rata* payment from the settlement fund. In furtherance of the reasonableness of this recovery, the Plaintiffs respectfully submit that this Court opined in its summary judgment ruling that "only the first call [Plaintiff received] clearly shows some type of ATDS was utilized." Thus, each Settlement Class member making a valid claim shall receive well in excess of the statutory damage of $500 per call.

Accordingly, the amount each Settlement Class member shall receive is fair, reasonable, and adequate given the purposes of the TCPA and the risk, expense, and uncertainty of continued litigation. *See Hashw,* 2016 U.S. Dist. LEXIS 61004, at *13 ("Given that victory was by no means certain and even if achieved, victory likely would have been a lengthy and costly affair for class members (as the TCPA includes no fee-shifting provision), in the Court's view an immediate, definite payment of $33.20 is both reasonable and fair.").

### B.  The Proposed Settlement Satisfies Rule 23(e)(2), Revised on December 1, 2018

In addition to these considerations, the recent amendments to Rule 23 effective December 1, 2018 require a court to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D)

Here, as set forth below, these factors weigh in favor of preliminary approval of the settlement.

### 1.   *Plaintiffs Have Adequately Represented the Class*

In addition to assisting counsel with the investigation of this case, both named Plaintiffs sat for their respective depositions and responded to written discovery demands.  As such, Plaintiffs dutifully participated in this case and represented the Class throughout the entirety of this litigation that was filed over four years ago.

In addition, we respectfully submit that class counsel has adequately represented the class throughout this litigation.  Plaintiffs' Counsel diligently pursued this litigation and ably defeated multiple motions addressing a myriad of arguments relating to all different aspects of the TCPA. Based on the foregoing, Plaintiffs submit that Rule 23(e)(2)(A) is satisfied.

### 2.   *The Settlement Negotiations Occurred at Arm's Length.*

The settlement negotiations between Class Counsel and counsel for Defendants were appropriately conducted at arm's length. "A presumption of correctness is said to attach to a class

settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *In re Linerboard Antitrust Litig*., 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) (quoting *Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)); 4 William B. Rubenstein, Newberg on Class Actions § 13:45 (5th ed.) ("[A] court will presume that a proposed class action settlement is fair when certain factors are present, particularly evidence that the settlement is the product of arms-length negotiation, untainted by collusion.").

Moreover, a presumption of fairness exists when the parties utilize a mediator to assist in the settlement. *See In re CIGNA Corp. Sec. Litig*., No. 02-8088, 2007 U.S. Dist. LEXIS 51089, 2007 WL 2071898, at *2 (E.D. Pa. July 13, 2007) (noting that a presumption of fairness exists where parties negotiate at arm's length, assisted by a mediator); *see also Gates v. Rohm & Haas Co*., 248 F.R.D. 434, 439 (E.D. Pa. 2008) (stressing the importance of arm's length negotiations in deciding to grant preliminary approval and highlighting the fact that the negotiations included "two full days of mediation before an experienced mediator").

Here, the Parties participated in two separate mediations.  In the second mediation held in November 2018, the Parties engaged the services of Hunter Hughes III, Esq., an experienced class action mediator with significant TCPA experience, to assist them with their settlement discussions. Schmierer Decl. ¶ 25.  At all times, the settlement discussions were arms-length and adversarial in nature. *Id*. ¶ 26. The Parties made substantial progress toward resolution during this full-day mediation session in November, and a settlement was ultimately reached after the Parties considered and accepted a mediator's proposal and then spent months negotiating settlement terms. *Id*.  Plaintiffs' counsel, experienced class action litigators who have litigated and settled dozens of TCPA cases, are satisfied that they obtained the best deal possible for the Settlement Class. *Id*.;

Friedman Declaration at ¶¶6, 7; Marcus Declaration at ¶6, 7; DeNittis Declaration., at ¶3. Accordingly, the proposed settlement is entitled to a strong initial presumption of fairness.

      3.      *The Relief Provided for the Class is Adequate*

The 4.35 million dollar settlement provides substantial relief to the Settlement Class and along the high range of recoveries when compared to other TCPA settlements. Moreover, the uncertainty and costs of continuing the litigation, including the prospect of the Court denying Plaintiffs' pending motion for class certification and granting Defendants' *Daubert* motions were present in this case. While Plaintiffs believe they would prevail on these pending motions, there is at least some risk they would not. Avoidance of this unnecessary expenditure of time and resources clearly benefits all parties. *See In re Gen Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense). In addition, there is substantial risk that any victory at trial would be hollow, leaving class members with nothing if Defendants successfully appealed. *See West Virginia v. Chas. Pfizer & Co*., 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial). In contrast, the settlement makes substantial monetary relief available to the Class Members in a prompt and efficient manner.

Furthermore, the proposed method of distributing relief to the Settlement Class is a *pro rata* distribution using records in Defendant AWP's possession, which is fair, reasonable and adequate under the facts presented herein.

Preliminary approval of the settlement is also warranted because the attorney's fees and related litigation costs – for all parties – were only expected to increase through a trial and into the appellate phase of this case, which, again, is already four years into the life cycle of this case. The 2018 Advisory Committee notes to Rule 23(e) also state that "[b]ecause some funds are frequently left unclaimed, the settlement agreement ordinarily should address the distribution of those funds." The Parties have accounted for this in the Settlement Agreement. After distribution to the Class, any remaining monies shall not revert to Defendants. Rather, the monies shall be distributed to two laudable and appropriate *cy pres* recipients.

Lastly, with respect to Class Counsel's fees and related litigation costs, there is no fee shifting under the TCPA and thus, settlement at this pretrial juncture is in the best interests of the Class. Rule 23(e)(2)(C) is also readily satisfied as the settlement here provides meaningful relief to the Class now and brings finality to this four-year litigation. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

Here, the Settlement Agreement provides excellent relief for the Settlement Class. Defendants agreed to pay the Gross Settlement Amount of $4,350,000 and no funds will revert to them. Each Settlement Class Member who submits a simple claim form will receive a *pro rata* share of the Settlement Fund after settlement expenses are deducted. Although the precise amount of each claimant's award cannot be determined until all claims have been submitted, counsel estimates that each claimant will receive $1100 depending on the claims filing rate. Schmierer Decl. ¶ 27. The estimated awards well exceed awards approved in other TCPA settlements. *See*

*In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, Case No. 1:13-md-02493-JPB-JES, Dkt. No. 1214 (N.D.W.V. June 12, 2018) (finally approving settlement where class members would receive approximately $38); *Lushe v. Verengo Inc.*, No. CV 13-07632 AB R, Dkt. Nos. 135-1, 137 (C.D. Cal. May 2, 2016) (finally approving settlement in which eligible claimants would receive $52); *Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13-1347-JCC, Dkt. Nos. 147, 151 (W.D. Wash. April 19, 2016) (finally approving settlement in which each eligible claimant received $97); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member would be awarded $39.66); *Rose v. Bank of Am. Corp.*, No. 11 Civ. 02390, 12 Civ. 04009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) (approving settlement with payments estimated to be between $20 and $40; actual payments were $46.98); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving settlement that provides a cash award of approximately $24.00 per class member, calling the settlement an "excellent result"); *Manouchehri v. Styles for Less, Inc.*, Case No. 14 Civ. 2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher).

In sum, Plaintiffs submit that the proposed settlement is an excellent outcome for the Settlement Class, especially in light of the risks of continued litigation. Even at this preliminary juncture, all factors favor settlement approval. Because the proposed settlement is "within the range" of possible approval, the Settlement Class should be notified and given the opportunity to evaluate the proposed settlement's terms.

23

4.      *The Class Members Are Treated Equitably Relative to Each Other*

Plaintiffs submit that the proposed settlement does not contain any "deficiencies" such as "unduly preferential treatment of class representatives . . . or excessive compensation for attorneys." MANUAL 3rd at § 30.41).  Indeed, the settlement is not contingent upon approval of attorneys' fees or any incentive award to the named Plaintiffs. The Court will separately and independently determine the appropriate amount of fees, costs, and expenses to award to Plaintiffs' counsel and the appropriate amount of any incentive award to the named Plaintiffs. The Class Notice will also disclose Plaintiffs' counsel's fee and cost request to Settlement Class Members.

Plaintiffs submit that the settlement treats all Settlement Class Members fairly. Each will receive an equal *pro rata* share of the Settlement Fund. In addition, the named Plaintiff will request a service award, given the tremendous service they have rendered the Settlement Class, including, but not limited to, participating in written discovery, sitting for depositions and assisting counsel in prosecuting this case.

As with counsel's fee request, Plaintiff has provided Settlement Class Members with notice of the requested service award (Settlement Agreement, Exhs. 2 through 4), and the Court will independently evaluate the request. For all these reasons, the proposed settlement treats all proposed Settlement Class Members equally and fairly, and there are no "deficiencies" preventing preliminary approval.

## IV.     **THE PROPOSED CLASS SATISFIES FED. R. CIV. P. 23**

During the pendency of the case, Defendants disclosed information relevant to the requirements of Fed. R. Civ. P. 23, including the size of the putative class, which the Parties have relied upon in reaching the Settlement Agreement and in bringing this motion. In considering the proposed settlement, the Court must determine whether a settlement class may be conditionally

24

certified for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*) ("[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Fed. R. Civ. P. 23(a) and (b) are met." (internal quotation marks omitted)); *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 300 (3d Cir. 2005) ("[R]egardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23.").

The parties have reached a proposed Settlement Agreement on behalf of the Settlement Class defined above, which meets all of the requirements of Rule 23.  Accordingly and for the following reasons, the Court should conditionally certify the proposed Settlement Class to allow them to receive notice of the settlement and its terms, including the right to submit a claim and recover money if the settlement is approved, the right to be heard on the settlement's fairness, the right to opt out of the settlement, and the date, time and place of the formal settlement hearing.

### A.    Rule 23(a) Requirements

### 1.    *Numerosity is Satisfied.*

In this case, the proposed Settlement Class is defined in terms of customers who received alleged solicitation calls which utilized a prerecorded voice, without prior express written consent from or on behalf of Defendants through the Global Connect Dialing system.  The class runs from October 13, 2013 (the effective date mandating prior express consent be *written*) and June 1, 2015 (the date upon which AWP revised its forms to include the requisite TCPA compliant language.)

To determine the approximate size of the Settlement Class, Plaintiffs' expert witness, Jeffrey Hansen, analyzed numerous Excel spreadsheets consisting of records of outbound calls

produced by Defendants and the non-party Global Connect.  Based upon the results of Mr. Hansen's analysis and further discussions between the Parties at their mediation session, the Parties determined the approximate size of the Settlement Class to be 24,074 unique numbers.  A class size of thousands would certainly satisfy the numerosity prerequisite.  Based upon the foregoing, Fed.R.Civ.P. 23(a)(1) "numerosity" is easily satisfied.

Regardless of the precise number, the size of the Settlement Class clearly satisfies the numerosity requirement of Rule 23(a)(1). The first requirement of Rule 23(a) is that the class members be so numerous that joinder is not practicable.  "Numerosity requires a finding that joinder of all members is impracticable." *Bonett v. Educ. Debt Servs.,* No. 01-6528, 2003 U.S. Dist. LEXIS 9757 at *5, (E.D. Pa. May 9, 2003) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 182 (3d Cir. 2001)); *In re Bulk Extruded Graphite Prods.,* 2006 U.S. Dist. LEXIS 16619 at *14 (D.N.J. April 4, 2007) (Numerosity satisfied where traditional joinder of parties would be "unworkable"). Generally, if the "potential number of plaintiffs exceed 40, the [numerosity] prong of Rule 23(a) has been met." *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001).

In the case at bar, the Settlement Class totals approximately seven hundred times the number found to be sufficient by the Third Circuit Court of Appeals in *Stewart*. It is unworkable for the members of a proposed class that large to be joined together in the same proceeding. As a result, the numerosity requirement is satisfied.

*2. Commonality is Satisfied.*

Satisfaction of the commonality requirement under Rule 23(a)(2) requires that Plaintiffs demonstrate their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*

26

*Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001) (internal quotation marks omitted); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597–98 (3d Cir. 2012). As this Circuit reiterated recently, "that bar is not a high one. We have acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, when plaintiffs did not bring identical claims, … and, most dramatically, when some plaintiffs' claims may not have been legally viable, …. In reaching those conclusions, we explained that the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is "on whether the defendant's conduct was common as to all of the class members." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382-83 (3d Cir. 2013) (citations omitted) (reviewing commonality standard in light of *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), and concluding that while "*Dukes* is an intervening and pointedly clear explication of the law, it did not announce any change in the test for determining commonality." *Rodriguez*, 726 F.3d at 381, n. 2).

This case involves allegations that the Defendants engaged in a common course of conduct towards Plaintiffs and the class members by placing ATDS solicitation calls to phones of consumers without their written consent.  The common questions of law and fact in this TCPA case include, but are not necessarily limited to: (1) whether Defendants placed ATDS calls using a prerecorded voice; (2) to telephones numbers; (3) of consumers; (4) which were solicitations within the meaning of the TCPA and surrounding regulations; (5) without prior express written consent.  Moreover, this case raises common questions relating to whether AWP was an agent of Home Depot, *i.e.* whether Home Depot is vicariously liable for the TCPA violations.  *See Melito v. Am. Eagle Outfitters, Inc.*, No. 14 Civ. 2440 (VEC), 2017 WL 3995619, at *7 (S.D.N.Y. Sept.

11, 2017) (finding commonality where common questions were whether defendant was vicariously liable for text messages and whether they were sent through an ATDS); *Zeidel v. A&M* (2015) *LLC*, No. 13 Civ. 6989, 2017 WL 1178150, at *5 (N.D. Ill. March 20, 2017) (finding commonality where plaintiff alleged text messages were sent "using the same third-party text messaging service").  Therefore, commonality is satisfied.

### 3. Typicality is Satisfied.

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 311 (3d Cir. 1998).  The "typicality" requirement of Rule 23(a)(3) is satisfied for the same reasons that the "commonality" requirement of Rule 23(a)(2) is met. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). To conduct the typicality inquiry, the court must examine "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006).

Here, Plaintiffs' and Settlement Class Members' claims and allegations herein arise from the same course of events: (i) filling out a water purity test form that did not disclose that an ATDS would be used; and (ii) receipt of a prerecorded solicitation call made by AWP on behalf of Home Depot, which was alleged to have been sent in violation of the TCPA.  The alleged harm suffered by Plaintiffs, the proposed class representatives, is identical to the alleged harm suffered by the Class members, in that their statutory right to privacy was invaded by Defendants when Defendants allegedly made solicitation calls to their phones using an ATDS with a prerecorded voice without prior express consent.  Further, this case is similar to *Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036, 1041 (9th Cir. Cal. 2012) where the Ninth Circuit affirmed provisional class

certification of an autodialed TCPA case. Typicality is thus satisfied. *See, also, Melito*, 2017 WL 3995619, at \*8 (typicality found where "all claims arise from the same events (their receipt of [defendant's] text messages on their cell phones) and are based on the same legal theory (liability under the TCPA)"); *Zeidel*, 2017 WL 1178150 at \*5 (finding typicality where in part the named plaintiff's "TCPA claim is indistinguishable from the absent class members' TCPA claims [and] she alleges the same statutory violation and seeks the same statutory damages").

In sum, Plaintiffs, as members of the Settlement Class, have the same interest in resolution of the issues as all other members of the Class and Plaintiffs' claims are typical of all members of the Class.

4. *Adequacy of Representation*.

Plaintiffs' counsel is experienced in class action and TCPA litigation. In addition, Plaintiffs have no interests which are antagonistic to the Settlement Class members. Therefore, Plaintiffs and their counsel satisfy the adequacy of representation requirement embodied in Rule 23(a)(4). The Declarations of Ross Schmierer, Ari Marcus and Todd Friedman, which are submitted herewith outline their qualifications to serve as Class Counsel.

**B.      Rule 23(b)(3) Requirements**.

In addition to meeting the requirements of Rule 23(a), a money-damages class must satisfy Rule 23(b)(3), namely that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and, (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed R. Civ. P. 23(b)(3). Both of these requirements are satisfied in the present case.

1. *Common Questions of Law and Fact Predominate Over Individual Ones*

Rule 23(b)(3) allows class certification of settlement classes where common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation.  When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and need not consider whether the case would be manageable if actually brought to trial. *Amchem Prods.*, 521 U.S. at 620; *Prudential*, 148 F.3d at 321.  Predominance also does not require that claims be identical.  *See Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 545 (D.N.J. 1999) (stating that "class members need not be identically situated upon all issues, so long as their claims are not in conflict").  Predominance exists where the efficiencies gained by the class resolution outweigh the individual issues. *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D. N.J. 2003) ("[C]ommon issues [must] be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members").  In discussing predominance, the Third Circuit has noted that the focus of the "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298.

In addition, predominance does not demand the complete absence of individual issues or require that all issues in the case be common ones. *See In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J.2003) ("[t]he mere existence of individual issues will not of itself defeat class certification."); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002).

Here, this case is well suited for settlement class treatment because it involves an alleged common course of conduct by Defendants giving rise to common claims which can be established through common proofs. The principal legal issue in this case is whether Defendants' alleged ATDS solicitation calls to consumers, without prior express consent,

violated the TCPA.  *See Barani v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 49838 at

\*9 (C.D. Cal. Sep. 8, 2014) ("The central inquiry is whether Wells Fargo violated the TCPA

by sending text messages to the Class Members. Accordingly, the predominance requirement

is met.").  Plaintiffs contend that there are no individualized issues with respect to prior

express consent, because AWP is alleged to have gathered phone numbers from Class

Members in the same exact manner across the board: using the same method (the water-test-

by-mail kits and accompanying forms) that this Court has already found to be insufficient

under the TCPA's telemarketing regulations.  *See* Dkt. No. 76.

Also, courts have held that the issue of consent under the TCPA can and should be

litigated on a class-wide basis in appropriate cases. *See Landsman & Funk PC v. Skinder-

Strauss Assocs.*, 640 F.3d 72, 94 (3d Cir. 2011)(criticizing the assertion in a district court

opinion that individual issues regarding consent could defeat class certification where TCPA

was broadcast as a uniformly-worded written fax to a mailing list compiled by defendant);

*Stern v DoCircle, Inc.*, 2014 WL 486262 (C.D. Cal. Jan. 29, 2014).

Lastly, predominance is satisfied herein because the same dialing system was used to

call every class member, and Plaintiffs allege that the purpose of all such calls was

telemarketing Defendants' products and services.  And the question of whether Home Depot

may be vicariously liable for the acts of AWP also turns on common evidence – the AWP

contract and control generally exercised over AWP with respect to monitoring and

management of the work.  *See Kevin Amini, et al. v. Heart Savers, LLC*, 2016 WL 10621698

(C.D. Cal. Oct. 17, 2016) (third party contractors used autodialer with artificial or prerecorded

voice solicit services of defendant; court found that common questions predominated

"because each proposed class member likely received a similar recorded phone call.  A

determination of liability will involve determining only whether the calls were made and if [Defendant Heart] is liable because of its legal relationship with the call center.")

   *2.   A Class Action is the Superior Method for Resolving the Class Claims*

   Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. "The superiority requirement is often met where class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding." [is this where the quote ends?] *Kaye v. Amicus Mediation & Arbitration Grp., Inc.*, 300 F.R.D. 67, 81 (D. Conn. 2014); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

   Plaintiffs submit that a class action is a superior method for the fair and efficient adjudication of this settlement.  The resolution of all claims held by members of the Settlement Class — who all allegedly received the prerecorded solicitation calls—in a single proceeding would promote judicial efficiency and avoid inconsistent opinions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23").   Aggregating these TCPA claims will eliminate the potential for "repetitious litigation" and "inconsistent adjudications" which could result if the claims were brought separately, and which otherwise "might stand in the way of a beneficial  comprehensive settlement." *See Labbate-D'Alauro v. GC Servs. Ltd. P'ship,* 168 F.R.D. 451, 458 (E.D. N.Y. 1996).

32

Further, the statutory damages available under the TCPA ($500 per violation, or $1,500 if the violation is willful) are small in comparison to the costs of litigation. *See, e.g., Melito*, 2017 WL 3995619, at *9 ("The statutory damages available under the TCPA . . . are small in comparison to the time, effort and expense of litigation . . . the resolution of all TCPA claims held by the Settlement Class in a single class action proceeding promotes judicial efficiency and the uniformity of decision.").

As a result, Settlement Class Members are unlikely to be willing or able to pursue relief on an individual basis, making the class action the superior method of adjudicating these claims. Where the alternative to a class action is likely to be no action at all for most of the class members, there is strong presumption in favor of a finding of superiority. *Cavin v. Home Loan Ct., Inc.*, 236, F.R.D. 387, 396 (N.D. Ill. 2006). Further, because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

Based on the foregoing, conditional certification of the Settlement Class is appropriate

## V.   THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* MANUAL § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

Plaintiffs submit that the proposed forms of notice, attached as Exhibits B, C, D, and F to the Settlement Agreement ("Notices"), satisfy the foregoing standards.  The Notices are clear, straightforward, and provide persons in the Settlement Class with enough information to evaluate whether to participate in the settlement. Thus, the Notices satisfy the requirements of Rule 23. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

Further, the Settlement Agreement provides that KCC shall send direct notice via email (to the extent addresses exist) and U.S. Mail to members of the Settlement Class for whom Defendants have such addresses and will perform reverse look-ups to obtain addresses for the remaining members of the Settlement Class.  KCC will also maintain a Settlement Website containing full details and information about the Settlement.  Moreover, the Settlement Website will have links to the germane documents in the litigation.  In sum, the Notice Program constitutes the best notice practicable under the circumstances, satisfying the requirements of due process and Rule 23.

## VI.     THIS COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING

Lastly, this Court should set a final approval hearing wherein the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the settlement may explain the terms and conditions of the Settlement Agreement and offer argument in support of final approval. The Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a final order and judgment under Rule 23(e).   As such, Plaintiff requests that the Court schedule further settlement proceedings pursuant to the schedule set forth in the annexed proposed Preliminary Approval Order.

## VII.   CONCLUSION

Accordingly, the Parties respectfully request this Honorable Court grant preliminary approval of the Settlement Agreement and enter the proposed order attached as <u>Exhibit E</u>, which provides a schedule for notice, objections, opt outs, and submission of claim forms, and sets a hearing to address the question of final approval.

Respectfully submitted this 23rd day of May, 2019.

*s/ Ross H. Schmierer*
DeNITTIS OSEFCHEN PRINCE, P.C.
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
Telephone:  (856) 797-9951
Facsimile:  (856) 797-9978
Email:  rschmierer@denittislaw.com

Ari H. Marcus, Esq.
MARCUS & ZELMAN, LLC
1500 Allaire Avenue, Suite 101
Ocean, New Jersey 07712
Telephone:  (732) 695-3282
Facsimile:  (732) 298-6256
E-Mail: Ari@MarcusZelman.com

Todd M. Friedman, Esq.
LAW OFFICES OF TODD M. FRIEDMAN
2155 Oxnard Street, #780
Woodland Hills, California 91367
Telephone:  (877) 206-4741
Facsimile:  (866) 633-0228
Email:  tfriedman@toddflaw.com

*Attorneys for Plaintiffs Aaron Manopla and*
*Evelyn Manopla, Individually and on Behalf*
*of All Others Similarly Situated*